No. 24-1838

# In the United States Court of Appeals for the Ninth Circuit

ANDREW KING, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*

v.

NAVY FEDERAL CREDIT UNION,
*Defendant-Appellee.*

On Appeal from the United States District Court for the Central District of California (Los Angeles), Case No. 2:23-cv-05915-SPG-AGR
(Hon. Sherilyn Peace Garnett)

## DEFENDANT-APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD

Jason J. Kim
Hakop Stepanyan
Marcus E. Nelson
HUNTON ANDREWS KURTH LLP
550 South Hope Street, 2000
Los Angeles, California 90071
213-532-2000
kimj@HuntonAK.com
hstepanyan@HuntonAK.com
mnelson@HuntonAK.com

Elbert Lin
David M. Parker
HUNTON ANDREWS KURTH LLP
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219
804-788-8200
elin@huntonAK.com
dparker@huntonAK.com

December 6, 2024

*Counsel for Defendant-Appellee*

SER-1

# INDEX

| Dkt. | Date | Document | Page |
|------|------|----------|------|
| 19 | October 19, 2023 | Order Granting Defendant's Motion to Dismiss [Dkt. 13] | SER-3 |
| 17-1 | October 4, 2023 | Declaration of Hakop Stepanyan in Support of Defendant's Motion to Dismiss Plaintiff's Complaint | SER-14 |
| 17-2 | October 4, 2023 | Exhibit A to Declaration of Hakop Stepanyan in Support of Defendant's Motion to Dismiss Plaintiff's Complaint | SER-18 |
| 13 | August 28, 2023 | Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Complaint | SER-18 |

1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10
11   ANDREW KING, on behalf of himself and    Case No. 2:23-cv-05915-SPG (AGRx)
     all others similarly situated,
12                                             **ORDER GRANTING DEFENDANT'S**
                          Plaintiff,           **MOTION TO DISMISS [ECF NO. 13]**
13
            v.
14
15   NAVY FEDERAL CREDIT UNION and
     DOES 1-50, inclusive,
16
                          Defendants.
17
18
19
20
21
22          Before the Court is Defendant Navy Federal Credit Union's Motion to Dismiss
23   Plaintiff's Complaint.  (ECF No. 13).  Plaintiff timely opposed the Motion.  Having
24   considered the parties' submissions, the relevant law, and the record in this case, the Court
25   finds this matter suitable for resolution without a hearing.  *See* Fed. R. Civ. P. 78(b); C.D.
26   Cal. L.R. 7-15.  For the reasons set forth below, the Court hereby GRANTS Defendant's
27   Motion.
28

I. **BACKGROUND**

   A. **Factual Background**

   The following facts are alleged in the Complaint and, for the purposes of ruling on this Motion, are taken as true:

   Plaintiff holds a personal checking account with Defendant. (ECF No. 1-2 ("Compl.") ¶ 35). In July 2022, Plaintiff attempted to deposit $38,206.65 into his account. (*Id.* ¶ 36). However, through no fault of Plaintiff's, the attempted deposit failed and Plaintiff was charged a $15.00 Returned Checks, Deposited or Cashed Fee on August 1, 2022. (*Id.* ¶ 37). Plaintiff alleges that Defendant's practice of charging these fees is unfair, deceptive, unlawful, and a breach of their contract. (*Id.* ¶¶ 12–30). Specifically, Plaintiff alleges that account holders like him have no control over whether checks they deposit will clear, nor can they anticipate it. (*Id.* ¶ 14). Plaintiff alleges that Defendant's policy of charging the $15.00 fee is particularly unfair when the deposit is merely attempted and no money was ever made available in an account because, in such instances, Defendant never incurred a loss. (*Id.* ¶¶ 19–20). Plaintiff likewise states that Defendant's choice of name for the fee, "Returned Checks, Deposited or Cashed Fee," implies that the fee will only be assessed if funds are actually wrongfully disbursed. (*Id.* ¶ 20).

   Plaintiff attaches to his Complaint, and thereby incorporates, the Account Agreement he entered into with Defendant. (*Id.* at 20). This Agreement states that Defendant reserves the right to "accept or reject any check presented" and to "revoke any settlement with respect to a check accepted by us, and to charge back to your account the amount of the check based on the return of the check or a receipt of notice of non-payment of the check, or claim a refund for such credit." (*Id.* at 26). The Agreement also states that "[f]ees and charges that may be assessed are disclosed on Navy Federal's current *Schedule of Fees and Charges*." (*Id.* at 22) (emphasis original). Plaintiff attaches the Schedule of Fees and Charges to her Complaint as well. (*Id.* at 31). It states that the fee for "Returned checks, deposited or cashed" will be $15.00. (*Id.*).

-2-

**B.      Procedural History**

Plaintiff filed this putative class action in the Superior Court for the County of Los Angeles on June 21, 2023.  (ECF No 1-2).  On July 21, 2023, Defendant removed the action to this Court on the basis of CAFA diversity jurisdiction.  (ECF No. 1 at 4).  On August 28, 2023, defendant filed the instant Motion to Dismiss.  (ECF No. 13 ("Mot.").  Plaintiff timely opposed and Defendant timely replied.  (ECF No. 16 ("Opp.")); (ECF No. 17 ("Reply")).

## II.      LEGAL STANDARD

**A.      Dismissal Under 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  When resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 556.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal is affirmed only if it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020) (internal citation and quotation marks omitted). However, the Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## III.    DISCUSSION

Defendant brings the instant Motion on various grounds, including that Plaintiff's breach of contract claim is inadequately alleged, that Plaintiff's UCL claim is preempted or otherwise barred by the Account Agreement's choice-of-law provision, and that Plaintiff's request for punitive damages or attorney's fees should be dismissed. *See generally* (Mot.). However, Defendant also raises a preliminary argument, which the Court finds should be addressed as a threshold matter: whether Plaintiff's claims, as currently alleged, are barred by failure to abide by the Account Agreement's "notice-and-cure" provision.

Plaintiff's Complaint, as currently pled, contains no allegations regarding whether he provided notice to Defendant of the alleged failures that have led to this lawsuit. The only potentially similar allegation states that "[p]laintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement." (Compl. ¶ 57). However, Plaintiff's Complaint does incorporate the Account Agreement by appending it as an Exhibit to the Complaint. (*Id.* at 20). It is undisputed that the Agreement includes a "notice-and-cure" provision which states:

> "Neither Member nor Navy Federal may commence, join, or be
> joined to any judicial action (as either an individual litigant or
> the member of a class) that arises from the other party's action
> pursuant to this Agreement or that alleges that the other party has
> breached any provision of, or any duty owed by reason of, this
> Agreement, until such party has notified the other party of such
> alleged breach and afforded the other party a reasonable period
> after the giving of such notice to take the corrective action."

(*Id.* at 25). Therefore, the Court will, before addressing the sufficiency of Plaintiff's Complaint, determine whether Plaintiff has failed to plead compliance with this provision such that dismissal of his Complaint is appropriate.

Failure to plead compliance with a notice-and-cure provision of a contract will serve as a bar to a claim for breach of contract, where the provision was clearly stated in the contract that was allegedly breached. *See, e.g.*, *Wilde v. Flagstar Bank FSB*, No. 18cv1370-LAB (BGS), 2019 WL 1099841, at *3 (S.D. Cal. Mar. 8, 2019) (finding plaintiff's cause of action for breach of contract "necessarily falls within the scope of the notice-and-cure provision because it directly relates to Flagstar's performance under the contract"). However, courts within the Ninth Circuit have disagreed regarding whether similar contractual notice-and-cure provisions apply to claims under the UCL or other statutes. Some courts have found that where the statutory claims arise out of actions taken pursuant to the contract that contains the notice-and-cure provision, a plaintiff must plead compliance with the provision. *See Giotta v. Ocwen Financial Corp.*, No. 15-cv-00620-BLF, 2016 WL 4447150, at *4–5 (N.D. Cal. Aug. 24, 2016), *aff'd*, *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017); *see also Wilde*, 2019 WL 1099841, at *3 (S.D. Cal. Mar. 8, 2019) (finding requirement to comply with notice-and-cure provision applied to claim under UCL where the contract "specifically sp[oke] to the issue governed by the statute"). Indeed, in *Giotta*, the Ninth Circuit, in an unpublished, and

1  therefore persuasive,[1] opinion, affirmed a Northern District of California order granting a

2  motion to dismiss where a plaintiff had failed to allege compliance with a contractual

3  notice-and-cure provision. *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422

4  (9th Cir. 2017) (holding that suit, including statutory causes of action, constituted a judicial

5  action that arose from the other party's actions pursuant to the contract containing the

6  notice-and-cure provision because the conduct being challenged was done pursuant to the

7  contract). On the other hand, several district courts in the Ninth Circuit have found the

8  opposite, declining to apply contractual notice-and-cure provisions to statutory claims that

9  relate to duties independent of the contract. *See e.g.*, *Kivett v. Flagstar Bank*, 333 F.R.D.

10  500, 504 (N.D. Cal. 2019) (finding notice-and-cure provision was irrelevant to claim under

11  Section 2953.8(a)) (overturned on other grounds *Kivett v. Flagstar Bank, FSB*, 2022 WL

12  1553266 (9th Cir. May 17, 2022)); *see also McShannock v. JP Morgan Chase Bank N.A.*,

13  354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018) (finding same).

14      The Court finds that, at least as applied to the Complaint at issue in this action, the

15  reasoning of *Giotta* is persuasive. The notice-and-cure provision of the Agreement

16  between the parties here makes clear that it applies both to actions for breach of contract

17  and to any action "that arises from the other party's action pursuant to this Agreement."

18  (Compl. at 25). Plaintiff's UCL cause of action is based on both the allegedly misleading

19  language of the Agreement itself and Defendant's alleged reliance on the Agreement to

20  assess fees that Plaintiff now alleges violate the UCL. This cause of action, therefore,

21  expressly "arises from" Defendant's action pursuant to the Agreement. Thus, as in *Giotta*,

22  this Court finds that the notice-and-cure provision applies both to Plaintiff's cause of action

23  for breach of contract and Plaintiff's UCL cause of action.

24      Perhaps recognizing this, Plaintiff focuses his opposition on the argument that

25  granting the Motion to Dismiss based on failure to comply with the notice-and-cure

26

27  [1] Unpublished decisions issued on or after January 1, 2007 may be cited "as persuasive
authority pursuant to Ninth Circuit R. 36-3(b)." *Uche-Uwakwe v. Shinseki*, 972 F. Supp.

28  2d 1159, 1189 n.14 (C.D. Cal. 2013).

SER-8

provision would be premature. (Opp. at 26–28). In support of this position, Plaintiff argues first that he sufficiently pled compliance with the provision by generically pleading that "Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement." (*Id.* at 26–27). However, this is a conclusory allegation, and does not suffice to allege the fact of providing notice. Plaintiff next argues that he did attempt to provide notice by attempting to obtain a refund of the fee. (*Id.* at 27). However, this attempt at a refund is not alleged in the Complaint and Plaintiff may not amend his allegations through facts raised in opposition to a motion to dismiss. *See A.C.C.S. v. Nielsen*, No. CV 18-10759-DMG (MRWx), 2019 WL 7841860, at *7 (C.D. Cal. Sept. 17, 2019) (describing principle that a plaintiff may not amend the complaint through statements made in an opposition brief as "well-settled") (citing *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008)). Should Plaintiff wish to amend the Complaint to allege that he provided notice, he may certainly do so.[2] Finally, Plaintiff argues that the notice-and-cure provision should be deemed futile. However, in support of this argument, Plaintiff argues that discovery will show the provision's futility.[3] (Opp. at 28). And yet, no such discovery has been done given the early stage of this action. Therefore, the Court finds that determining potential futility of the notice-and-cure provision on the instant motion would be premature. This is particularly true because the Complaint, as already highlighted, is devoid of any allegations of provision of notice.[4] Therefore, the Court finds that because Plaintiff has failed to plead

---

[2] The Court will refrain from analyzing whether a refund request qualifies as sufficient notice until the issue is squarely before it and the parties have had an appropriate opportunity to address it.

[3] Plaintiff also points to a Northern District of California case that determined a notice-and-cure provision was futile. (Opp. at 27). However, the court in that case made such a determination on a Motion for Class Certification, after discovery had already progressed. *Kivett v. Flagstar Bank*, 333 F.R.D. 500, 504 (N.D. Cal. 2019)

[4] Plaintiff makes one further argument that he need not plead compliance because the notice-and-cure provision should only be raised on an affirmative defense. However, as

1  compliance with the notice-and-cure provision, the Motion to Dismiss should be granted.

2  However, the Court is mindful that leave to amend should be freely granted and therefore

3  will allow Plaintiff an attempt to amend his Complaint.[5]

4  **IV.    CONCLUSION**

5        For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to

6  Dismiss, with leave to amend.  Plaintiff shall file a First Amended Complaint, if any, within

7  fourteen (14) calendar days of the issuance of this Order.  If Plaintiff does not file an

8  amended complaint within this time, the Court will dismiss the case, without prejudice.

9        IT IS SO ORDERED.

10

11  DATED:  October 19, 2023

12                              HON. SHERILYN PEACE GARNETT

13                              UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25  already described, courts within this Circuit have found that the provision of notice should
    be pled in the Complaint in the first instance.

26

27  [5] Because the Court finds, as a threshold matter, that the Complaint fails to plead
    compliance with the notice-and-cure provision, the Court will not address the further

28  arguments raised by Defendant at this time.

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I electronically filed the foregoing Supplemental Excerpts of Record with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Elbert Lin*
Elbert Lin

1  Jason J. Kim (State Bar No. 221476)
2  kimj@HuntonAK.com
   Hakop Stepanyan (State Bar No. 296782)
3  hstepanyan@HuntonAK.com
   Marcus E. Nelson (State Bar No. 347650)
4  mnelson@HuntonAK.com
5  **HUNTON ANDREWS KURTH LLP**
   550 South Hope Street, Suite 2000
6  Los Angeles, California 90071-2627
7  Telephone:  (213) 532-2000
   Facsimile:  (213) 532-2020
8
9  Attorneys for Defendant
   NAVY FEDERAL CREDIT UNION
10

11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**
13                    **WESTERN DIVISION**
14

15  ANDREW KING, on behalf of himself      Case No.:  2:23-cv-05915 SPG (AGRx)
    and all others similarly situated,
16                                          Hon. Sherilyn Peace Garnett
17               Plaintiff,
                                            **DECLARATION OF HAKOP**
18        v.                                **STEPANYAN IN SUPPORT OF**
                                            **DEFENDANT NAVY FEDERAL**
19  NAVY FEDERAL CREDIT UNION               **CREDIT UNION'S MOTION TO**
    and DOES 1-50, inclusive,               **DISMISS PLAINTIFF'S**
20                                          **COMPLAINT**
21               Defendants.
                                            *[Reply in Support of Motion to Dismiss*
22                                          *and Request for Judicial Notice filed*
23                                          *concurrently herewith]*
24
25                                          Date:      October 18, 2023
26                                          Time:      1:30 p.m.
                                            Crtm:      5C
27
28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DECLARATION OF HAKOP STEPANYAN IN SUPPORT OF
DEFENDANT NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

SER-12

1     I, Hakop Stepanyan, declare as follows:

2     1.    I am an attorney in good standing before the Court in this action.  I am an

3  attorney at Hunton Andrews Kurth LLP, counsel of record for Defendant Navy

4  Federal Credit Union ("Navy Federal").  I have personal knowledge of the matters set

5  forth herein, and if called upon to do so, could and would testify competently thereto.

6     2.    On October 2, 2022, I downloaded Navy Federal's current Schedule of

7  Fees and Charges, attached hereto as **Exhibit A**, from the following website:

8  https://www.navyfederal.org/content/dam/nfculibs/pdfs/membership/2043ep.pdf.

9

10     I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct.  Executed on October 4, 2023.

By: _____

Hakop Stepanyan

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

1

DECLARATION OF HAKOP STEPANYAN IN SUPPORT OF
DEFENDANT NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

SER-13

**EXHIBIT A**

Case: 24-1838, 12/06/2024, DktEntry: 33.1, Page 15 of 45
Case 2:23-cv-05915-SPG-AGR   Document 17-2   Filed 10/04/23   Page 2 of 4   Page ID #:224



# SCHEDULE OF FEES AND CHARGES

**Our Members Are the Mission**

---

1-888-842-6328

For toll-free numbers when overseas, visit navyfederal.org.

Collect internationally
1-703-255-8837

TDD for the hearing impaired
1-888-869-5863

Online at navyfederal.org

Or visit a branch

---

### Checks, Checkbook Covers and Accessories
Pricing varies depending on style and quantity selected. Visit us online at **navyfederal.org** to see our product line and pricing.

### Checking Accounts
**Flagship Checking**
> Monthly service fee . . . . . . . . . . . . . . . $10.00
(if average daily balance is less than $1,500.00 during the statement period)

### Miscellaneous Checking, Checking Protection and Share Savings Account Fees
> Non-sufficient funds fee (NSF) charged once at the first presentment of a check or ACH when returned because of insufficient funds
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $29.00

> Optional Overdraft Protection Service (OOPS) transaction for checking accounts[1] (maximum 1 fee per day)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20.00

> Stop payment for a single item . . . . . $20.00
For a series of items . . . . . . . . . . . . . . . $25.00

> Copy of, or information from, a paid or deposited item
1 request per month . . . . . . . . . . . . No charge
More than 1 (per copy) . . . . . . . . . . . . . . $1.00

> Repeated checkbook balancing assistance (per 1/2 hour) . . . . . . . . . . . . . . . . . . . . . $5.00

### Checking or Savings
> Cashier's checks, more than 2 checks per day (per check) . . . . . . . . . . . . . . . . . . . . . . $5.00

> Inactive Member fee assessed on savings accounts of members age 24 and over with less than $50.00, no activity in 12 months and no other Navy Federal products (per quarter) . . . . . . . . . . . . . . . . . . . . . . $3.00

> Dormant Checking Account fee assessed on checking accounts of members age 24 and over with a combined savings and checking balance less than $50.00, no activity in 12 months and no other Navy Federal products (per quarter) . . . . . . . . . . . . . . . . . . . . . . $3.00

> Account number reassignments (more than once in the same calendar year) . . . . . $25.00

---

### Adjustment to a CO-OP ATM
**Check Deposit**
> For deposits made at CO-OP Network® ATMs, the ATM owner will impose a fee per item if an adjustment is processed due to one of the following discrepancies in the deposit: the currency appears to be counterfeit; the currency is foreign; the deposit contents do not equal the deposit amount in U.S. dollars as entered into the ATM; an item is unsigned by the maker; an item is dated more than 6 months prior to the date of deposit; the numerical and written amounts do not agree; the deposit is over $1,000.00 and contains an obvious alteration . . . . . . . . . . . . . . $2.00

### Returned CO-OP ATM Check Deposit
> For each adjustment initiated for deposit items processed and subsequently returned by the financial institution, the ATM owner will impose a fee per item at the time the adjustment is processed . . . . . . . . . . . $6.00

### Money Transfers
> Bank wire transfer
Incoming . . . . . . . . . . . . . . . . . . . . . No charge
Outgoing—Domestic . . . . . . . . . . . . . . . $14.00
Outgoing—International . . . . . . . . . . . $25.00

> Domestic and international cash transfer (maximum per order is $10,000.00) . . . . . . . . . . . . . . . . . . . . . $14.50

### Navy Federal Debit Card/CUCARD®
**Mailing Fees**
> First-Class USPS, new or replacement card* . . . . . . . . . . . Free

> First-Class USPS, system-generated PIN* . . . . . . . . . . . . . Free

> FedEx, new or replacement card + UPS, system-generated PIN . . . . . . . . . . . . . $17.45

> FedEx, new or replacement card with self-selected PIN . . . . . . . . . . . . . . . $11.50

> UPS, PIN only . . . . . . . . . . . . . . . . . . . . . $5.95

*The date of delivery depends on the postal service in your area.



# SCHEDULE OF FEES AND CHARGES
### CONTINUED

**NAVY FEDERAL** Credit Union

*Our Members Are the Mission*

## GO Prepaid Card

> Inactive fee (after 6 consecutive months with no transactions, the card will be charged until the balance is depleted or the cardholder makes another transaction)
. . . . . . . . . . . . . . . . . . . . . . . . . . . .$1.00 per month

> Non-Navy Federal/Non-CO-OP Network ATM . . . . . . . . . . . . . . . . . . . . . . $1.00 per transaction

> Lost/stolen or replacement fee . . . . . . $5.00

> Express delivery fee . . . . . . . . . . . . . . . $5.00

## Visa® Gift Card

> Inactive fee (after 12 consecutive months with no transactions, the card will be charged until the balance is depleted or the cardholder makes another transaction)
. . . . . . . . . . . . . . . . . . . . . . . . $5.00 per month

> Lost/stolen or replacement fee . . . . . . $5.00

> Express delivery fee . . . . . . . . . . . . . . . . $5.00

Cards sold in branches in AZ, CT, HI, LA, ME, NH, NJ, RI and VT do not incur inactivity fees.

## Miscellaneous Account Services

> Address research/unclaimed shares fee (per quarter) . . . . . . . . . . . . . . . . . . No charge

## Notary Public Service

> Navy Federal-related document . . . No charge

> Non-Navy Federal document
First 2 per week. . . . . . . . . . . . . . . No charge

Each additional document, not to exceed the local jurisdiction fee maximum . . . . . . $5.00 per

Navy Federal-provided Notary Public services generally are available in all jurisdictions except California and Louisiana. In California, notary public services are limited to Navy Federal-related documents only. Navy Federal does not offer notary public services in Louisiana. Navy Federal does not notarize wills or advance directives due to legal requirements and ramifications associated with such documents. Navy Federal also does not notarize I-9 forms.

SER-16

# SCHEDULE OF FEES AND CHARGES
## CONTINUED

**NAVY FEDERAL Credit Union**  *Our Members Are the Mission*

### Current ATM and Point-of-Sale (POS) Fees
Fees are subject to change.

| TRANSACTION TYPE | NAVY FEDERAL ATM | CO-OP NETWORK ATM | NON-NAVY FEDERAL/ NON-CO-OP NETWORK ATM | INTERLINK²/ MAESTRO® |
|---|---|---|---|---|
| Cash withdrawal² | None | None | $1.00 | Not Applicable |
| Transfer | None | None | $1.00 | Not Applicable |
| Inquiry | None | None | $1.00 | Not Applicable |
| Purchase cash back | Not Applicable | | | Some merchants may impose a cash-back fee. |
| Deposit³ | None | None | Not Applicable | Not Applicable |
| Rejected transactions — Result from account-related problems such as non-sufficient funds and request exceeds limit | None | None | $1.00 | Not Applicable |
| Invalid PIN attempts | None | None | $1.00 | Not Applicable |
| Point-of-sale purchases | Not Applicable | | | Some merchants in some states may impose a surcharge. |

**Reminders:**

> Please ensure that you have sufficient funds in your account to cover the withdrawal and the fee.

> All checks and cash deposits to non-Navy Federal ATMs are subject to a 5-business-day hold beginning the date the check is posted.

> Deposits can be made at Navy Federal-owned ATMs and CO-OP Network ATMs.

> Loan payments can only be made at Navy Federal-owned ATMs.

> You cannot transfer funds to another member's account, including family members, via the ATM.

> Some financial institutions or ATM networks outside of the Navy Federal/CO-OP networks may charge you an additional convenience fee for using their ATMs.

### Navy Federal Debit Card/GO Prepaid Card/CUCARD

| International Transactions—Non-Navy Federal ATMs and Point-of-Sale | |
|---|---|
| Point-of-sale transactions made in foreign countries include internet and ATM transactions made while you are in the U.S. (or in any other location) with merchants that process the transactions in foreign countries. | 1% per transaction |



¹ For more information, see the Optional Overdraft Protection Service Disclosure (NFCU Form 657).
² Navy Federal Gift Cards cannot be used to obtain cash from the ATM or cash back at the Point-of-Sale.
³ GO Prepaid Cards and gift cards are not eligible for deposits at the ATM.

Insured by NCUA.
© 2023 Navy Federal NFCU 2043ep (7-23)

Page 3 of 3

SER-17

1   Jason J. Kim (State Bar No. 221476)
2   kimj@HuntonAK.com
    Hakop Stepanyan (State Bar No. 296782)
3   hstepanyan@HuntonAK.com
    Marcus E. Nelson (State Bar No. 347650)
4   mnelson@HuntonAK.com
5   **HUNTON ANDREWS KURTH LLP**
    550 South Hope Street, Suite 2000
6   Los Angeles, California 90071-2627
7   Telephone:  (213) 532-2000
    Facsimile:  (213) 532-2020
8
9   Attorneys for Defendant
10  NAVY FEDERAL CREDIT UNION

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13                  **WESTERN DIVISION**

14

| | |
|---|---|
| 15  ANDREW KING, on behalf of himself and all others similarly situated, | Case No.:  2:23−cv−05915 SPG (AGRx) |
| 16 | |
| 17              Plaintiff, | Hon. Sherilyn Peace Garnett |
| 18       v. | **DEFENDANT NAVY FEDERAL CREDIT UNION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| 19 | |
| 20  NAVY FEDERAL CREDIT UNION and DOES 1-50, inclusive, | |
| 21 | |
| 22              Defendants. | Date:       September 27, 2023 |
| 23 | Time:       1:30 p.m. |
|  | Crtm:       5C |
| 24 | |
| 25 | Complaint Filed:    June 21, 2023 |
|  | Date of Removal:  July 21, 2023 |

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 27, 2023 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5C of the above-entitled Court located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Navy Federal Credit Union ("NFCU") will, and hereby does, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move this Court for an order dismissing this lawsuit in its entirety.

This motion is based on the grounds that Plaintiff fails to state a claim upon which relief can be granted with regard to his First Claim for Relief (breach of contract, including breach of the implied covenant of good faith and fair dealing) and Second Claim for Relief (violation of California's Unfair Competition Law).  NFCU further moves to dismiss Plaintiff's requests for punitive damages and attorneys' fees because neither form of relief is recoverable under the claims asserted.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all the pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 28, 2023.  The parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference.

Dated:  August 28, 2023                    **HUNTON ANDREWS KURTH LLP**

By:  _____*/s/ Jason J. Kim*_____
                    Jason J. Kim
                    Hakop Stepanyan
                    Marcus E. Nelson
            Attorneys for Defendant
            NAVY FEDERAL CREDIT UNION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................... 1

II. FACTS ....................................................................................................... 3

    A. NFCU's Business And Operations ................................................ 3

    B. The Account Agreement ............................................................... 3

    C. Plaintiff's Allegations .................................................................. 4

    D. Plaintiff's Central Theory ............................................................ 4

III. PLAINTIFF'S PLEADING BURDEN ...................................................... 6

IV. PLAINTIFF FAILS TO STATE ANY VIABLE CAUSE OF ACTION ........... 6

    A. Plaintiff's Claims Are Barred By The Notice-And-Cure Provision .......... 6

    B. Plaintiff's Breach Of Contract Claim Independently Fails ................. 8

        1. Plaintiff Fails To Allege A Breach Of Contract ............................ 8

        2. Plaintiff Fails To Allege A Breach Of The Implied Covenant Of Good Faith And Fair Dealing ................................................. 9

    C. Plaintiff's UCL Claim Independently Fails ............................. 10

        1. Plaintiff Fails To Allege He Lacks An Adequate Legal Remedy ...................................................................................... 10

        2. The UCL Claim Is Preempted ................................................. 12

        3. The UCL Claim Is Barred By The Account Agreement's Choice-Of-Law Provision ....................................................... 14

        4. Plaintiff Fails To Allege Unlawful, Unfair, Or Fraudulent Conduct ................................................................................... 15

V. PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES SHOULD BE DISMISSED .......................................... 17

    A. Plaintiff Cannot Recover Punitive Damages ........................... 17

    B. Plaintiff Cannot Recover Attorneys' Fees ............................... 18

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

i

VI.    CONCLUSION ................................................................................................ 18

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

ii

# **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
  2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ....................................................10

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) ..........................................................................6

*Albayero v. Wells Fargo Bank, N.A.*,
  2011 WL 4748341 (E.D. Va. 2011) ...................................................................9

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ......................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ..........................................................................................14

*Baptista v. JPMorgan Chase Bank, N.A.*,
  640 F.3d 1194 (11th Cir. 2011) ......................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................6

*Bhutta v. DRM Constr. Corp.*,
  2023 WL 3901800 (E.D. Va. June 8, 2023) ....................................................17

*Black v. State Farm Gen. Ins. Co.*,
  2019 WL 7905736 (C.D. Cal. Dec. 23, 2019) .................................................17

*Brown v. Harms*,
  251 Va. 301 (1996) ............................................................................................8

*Canas v. Ocwen Loan Servicing LLC*,
  2015 WL 5601838 (C.D. Cal. Sept. 21, 2015) ..................................................9

*Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*,
  2 Cal. 4th 342 (1992) ........................................................................................9

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

iii

SER-22

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................18

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ....................................................................12

*Clark v. Superior Ct.*,
    50 Cal. 4th 605 (2010) ................................................................17

*Credit Union Nat'l. Ass'n v. Nat'l Credit Union Admin.*,
    57 F. Supp. 2d 294 (E.D. Va. 1995) ..........................................12

*Dirks v. CitiMortgage, Inc.*,
    2020 WL 7089823 (C.D. Cal. Nov. 19, 2020) ...........................16

*Docena v. Navy Fed. Credit Union*,
    2016 WL 53826 (D. Nev. Jan. 4, 2016) ....................................8, 9

*Gibson v. Jaguar Land Rover N. Am.*,
    LLC, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ................10, 11

*Giotta v. Ocwen Fin. Corp.*,
    2016 WL 4447150 (N.D. Cal. Aug. 24, 2016) ...........................1, 7

*Giotta v. Ocwen Loan Servicing, LLC*,
    706 F. App'x 421 (9th Cir. 2017)..................................................1

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) .....................................................14

*Guz v. Bechtel Nat'l. Inc.*,
    24 Cal. 4th 317 (2000) ..................................................................9

*Johnson v. Countrywide Home Loans, Inc.*,
    2010 WL 5138392 (E.D. Va. Dec. 10, 2010) ...............................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..............................................................10

*Lambert v. Navy Fed. Credit Union*,
    2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ...............2, 13, 14, 15

*Loo v. Toyota Motor Sales, USA, Inc.*,
    2019 WL 7753448 (C.D. Cal. Dec. 20, 2019)..............................11

iv

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

*In re Macbook Keyboard Litig.*,
　2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ........................................10, 11

*Madrigal v. Hint, Inc.*,
　2017 WL 6940534 (C.D. Cal. Dec. 14, 2017).......................................12

*Monaco v. Bear Stearns Companies, Inc.*,
　2011 WL 11027559 (C.D. Cal. Jan. 13, 2011).......................................16

*Montgomery v. Bank of Am. Corp.*,
　515 F. Supp. 2d 1106 (C.D. Cal. 2007) ...............................................14

*Monton v. Am.'s Servicing Co.*,
　2012 WL 3596519 (E.D. Va. 2012) .......................................................9

*Nat'l Ass'n of State Credit Union Sup'rs v. Nat'l Credit Union Admin.*,
　188 F.3d 228 (4th Cir. 1999) ................................................................12

*Navy Fed. Credit Union v. LTD Fin. Servs.*,
　LP, 972 F.3d 344 (4th Cir. 2020) .........................................................15

*Neagle v. Altisource Sols., Inc.*,
　820 F. App'x 606 (9th Cir. 2020) (dismissing Sherman Act and RICO
　claims)...................................................................................................7

*Neagle v. Goldman Sachs Grp., Inc*,
　2019 WL 1102199 (D. Or. Mar. 1, 2019) .............................................7

*Nedlloyd Lines B.V. v. Superior Ct.*,
　3 Cal. 4th 459 (1992) ...........................................................................15

*Nolte v. Cedars-Sinai Med. Ctr.*,
　236 Cal. App. 4th 1401 (2015) ............................................................16

*O'Connell v. Bean*,
　263 Va. 176 (2002) ..............................................................................17

*O'Shea v. Littleton*,
　414 U.S. 488 (1974)..............................................................................10

*Oasis West Realty, LLC v. Goldman*,
　51 Cal. 4th 811 (2011) ...........................................................................8

*Pulte Home Corp. v. Am. Safety Indem. Co.*,
　268 F. Supp. 3d 1091 (S.D. Cal. 2017) ...........................................14, 15

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) ........................................................................14

*Schertz v. Ford Motor Co.*,
   2020 WL 5919731 (C.D. Cal. July 27, 2020) ...................................................10

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
   2012 WL 13028094 (C.D. Cal. Apr. 4, 2012)............................................10, 11

*Smith v. Flagstar Bank, FSB*,
   2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) ....................................................7

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................2, 10, 11

*Squire v. Virginia Hous. Dev. Auth.*,
   287 Va. 507 (2014) .............................................................................................8

*Whittington v. Mobiloil Fed. Credit Union*,
   2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ...........................................12, 14

*Wilson v. Holyfield*,
   227 Va. 184 (1984) .............................................................................................9

*Zeller v. Optavia, LLC*,
   2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ................................................11

*Zhang v. Superior Ct.*,
   57 Cal. 4th 364 (2013) ......................................................................................18

**Statutes**

12 U.S.C. § 1766(a) ................................................................................................12

12 U.S.C. § 4311 ....................................................................................................12

Cal. Civ. Code § 2954.8(a) ......................................................................................7

Cal. Civ. Code § 3294 ............................................................................................17

**Other Authorities**

12 C.F.R. Part 1074 (Appendix A) ........................................................................16

12 C.F.R. § 701.35(c) ......................................................................................12, 13

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

vi

12 C.F.R. § 707.1(d) ........................................................................................... 13

12 C.F.R. § 707.4(b)(4) ...................................................................................... 13

49 Fed. Reg. 46552-01 (Nov. 27, 1984) ...................................................... 3, 12

50 Fed. Reg. 4636-01 (Feb. 1, 1985) ................................................................ 13

NCUA Op. Letter 04-0147 (Feb. 10, 2004) ...................................................... 3

NCUA Op. Letter 04-0259 (Mar. 12, 2004) .................................................... 13

NCUA Op. Letter 07-0743 (Aug. 7, 2007) ...................................................... 13

NCUA Op. Letter 97-0508 (July 7, 1997) ....................................................... 13

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

vii

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Plaintiff Andrew King complains that Defendant Navy Federal Credit Union

4 ("NFCU") improperly charged him a "returned checks, deposited or cashed" fee

5 ("RCDC fee") in violation of NFCU's standard "Important Disclosures" agreement

6 (the "Account Agreement").  Plaintiff acknowledges his Account Agreement discloses

7 the existence of RCDC fees—indeed, the Schedule of Fees and Charges (the "Fee

8 Schedule") attached as Exhibit C to his complaint specifically lists a $15 fee in

9 connection with "returned checks, deposited or cashed."  Despite this, Plaintiff

10 implausibly claims the term "deposit" as used in the Account Agreement should be

11 interpreted to mean "to deposit an item *and to receive use of the funds deposited* in

12 exchange."  Compl. ¶ 21 (emphasis added).  Stated differently, Plaintiff claims a

13 "deposit" does not occur unless and until funds are made available to him.  Plaintiff's

14 Account Agreement, however, specifically says otherwise—explicitly distinguishing

15 between the making of a "deposit" and the "availability" of funds—and, not

16 surprisingly, his claims fail on that basis alone.  *See*, *e.g.*, Compl., Exh. B, at 8-10.

17

While the plain language in Plaintiff's Account Agreement is dispositive on its

18 own, the flaws in his complaint run far deeper:

19

*First*, Plaintiff failed to comply with the notice-and-cure provision in his

20 Account Agreement, which expressly covers actions like this that "arise[] from

21 [NFCU's] actions pursuant to" the Account Agreement or that "allege[] [NFCU] has

22 breached any provision of" the Account Agreement.  As multiple courts have held,

23 Plaintiff's failure to provide the requisite notice is fatal, and the Court should dismiss

24 his complaint on that basis alone.  *See*, *e.g.*, *Giotta v. Ocwen Fin. Corp.*, 2016 WL

25 4447150, at *2-6 (N.D. Cal. Aug. 24, 2016), aff'd sub nom. *Giotta v. Ocwen Loan

26 Servicing, LLC*, 706 F. App'x 421 (9th Cir. 2017).

27

*Second*, even if Plaintiff had provided the requisite notice, his claims fail

28 nonetheless under the express terms of the Account Agreement.  As stated above, the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Account Agreement expressly permits NFCU to assess RCDC fees, and it nowhere

2    requires NFCU to make the entirety of Plaintiff's deposit available to him before it

3    does so.  Quite simply, NFCU acted in accordance with the express terms of the

4    Account Agreement, and Plaintiff cannot show otherwise.

5         *Third*, Plaintiff's claim under California's unfair competition laws (the "UCL

6    claim") fails for multiple, independent reasons.  As an initial matter, Plaintiff's UCL

7    claim fails under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*,

8    971 F.3d 834, 845 (9th Cir. 2020), because Plaintiff has not and cannot show he lacks

9    an adequate legal remedy.  Indeed, Plaintiff seeks the same monetary relief sought

10   through his contract claim—a refund of the RCDC fee assessed.

11        Similarly, Plaintiff's UCL claim is preempted by the National Credit Union

12   Administration's ("NCUA") regulations implementing the Federal Credit Union Act

13   ("FCUA") and Truth in Savings Act ("TISA").  As courts have held, Plaintiff cannot

14   use a state consumer law to dictate what fees NFCU may charge or how it may charge

15   them.  *See*, *e.g.*, *Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *2 (E.D.

16   Va. Aug. 14, 2019).  The same result should follow here.

17        Likewise, Plaintiff's UCL claim is foreclosed by the choice-of-law provision in

18   his Account Agreement.  Because Plaintiff's Account Agreement is governed by

19   Virginia law, he cannot bring a claim under California's consumer protection laws.

20   *See*, *e.g.*, *Lambert*, 2019 WL 3843064, at *6.

21        Finally, Plaintiff fails to allege the requisite conduct to support a UCL claim.

22   Plaintiff fails to allege any "unlawful" conduct because he cannot cite a single law that

23   NFCU supposedly violated.  Plaintiff fails to allege any "fraudulent" conduct because

24   the RCDC fee is openly disclosed in the Fee Schedule.  And Plaintiff fails to allege

25   any "unfair" conduct because he has not and cannot show NFCU engaged in any

26   "misleading and deceptive conduct."  Compl. ¶ 67.  Rather, NFCU complied with the

27   terms to which Plaintiff agreed.  Plaintiff's UCL claim fails on multiple fronts, and the

28   Court should dismiss it.

2

1    In the end, Plaintiff is using this lawsuit to rewrite the contract to which he

2  agreed.  For the reasons stated above, he cannot do so.  The Court should dismiss

3  Plaintiff's complaint in its entirety and with prejudice.

## II.  FACTS

### A.  NFCU's Business And Operations

6    NFCU is a federally-chartered not-for-profit credit union whose members

7  consist of United States military personnel and their families.[1]  Unlike banks, "[c]redit

8  unions are nonprofit cooperatives, owned by their members and democratically

9  controlled, that may only lend and pay dividends to their members and, as such, are

10  *disinclined by their nature and structure to engage in the kinds of practices regarded*

11  *as predatory or abusive*."  NCUA Op. Letter 04-0147 (Feb. 10, 2004) (emphasis

12  added); *see also* 49 Fed. Reg. 46552-01 (Nov. 27, 1984) ("[U]nlike other financial

13  institutions, [federal credit unions] are controlled by their membership.").  Consistent

14  with this philosophy, NFCU strives to "act with the highest degree of integrity,"

15  taking pride in its "good name and reputation," and working to provide "the highest

16  level of service" to its member-owners.[2]

### B.  The Account Agreement

18    Plaintiff maintains a personal checking account at NFCU.  Compl. ¶ 35.  The

19  checking account is governed by the Account Agreement.  *Id.* ¶ 53; Exh. B.  As a

20  member of NFCU, Plaintiff "agree[d] to abide by" the terms and conditions of the

21  Account Agreement.  *Id.*, Exh. B at 1.

22    The Account Agreement provides that "[f]ees and charges that may be assessed

23  are disclosed on [NFCU's] current [Fee Schedule]."  Compl., Exh. B at 3.  And that

24  Fee Schedule discloses a $15 RCDC fee.  *Id.*, Exh. C at 1.  Under the Account

25  Agreement, NFCU expressly reserved the right to "accept or reject any check

26  presented."  *Id.*, ¶ 27; Exh. B at 10.

[1] *See* https://www.navyfederal.org/about.html.
[2] *See* https://www.navyfederal.org/about/operations.html.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### C.    Plaintiff's Allegations

Plaintiff alleges that, in July of 2022, he deposited a $38,206.65 check into his account.  Compl. ¶ 36.  The check ultimately was returned, and, consistent with the Account Agreement, NFCU charged Plaintiff a $15 RCDC fee on August 1, 2022.  *Id.* ¶ 37.  Notwithstanding that the Account Agreement expressly spells out this RCDC fee, Plaintiff claims the fee was "unfair, misleading, and unauthorized by the contract."  *Id.*

Plaintiff asserts two claims against NFCU relating to its assessment of RCDC fees: (1) breach of contract, including breach of the implied covenant of good faith and fair dealing; and (2) violation of UCL.  Plaintiff purports to bring these claims on behalf of a nationwide class consisting of: "All NFCU accountholders who, during the applicable statute of limitations through the date of class certification, were charged [RCDC fees] on attempted deposits that were returned."  Compl. ¶ 38.

### D.    Plaintiff's Central Theory

Plaintiff acknowledges NFCU disclosed the existence of RCDC fees in his Account Agreement.  Compl., Exh. C (disclosing a $15 fee for "Returned checks, deposited or cashed").  Plaintiff similarly acknowledges NFCU can assess RCDC fees when returned checks are deposited.  *Id.* ¶ 23.  Despite this, Plaintiff claims returned checks are not "deposited" unless and until an accountholder has access to deposited funds.  *See*, *e.g.*, *id.* ¶¶ 12, 21-23.  Stated differently, Plaintiff claims "deposited" should mean "to deposit an item *and* to receive use of the funds deposited in exchange."  *Id.* ¶ 21 (emphasis added).  Thus, according to Plaintiff, "[w]here there is no cash provided—in other words, where only an *attempted* deposit occurs—NFCU is not authorized by contract to assess a [RCDC fee]."  *Id.* ¶ 31.  Plaintiff's Account Agreement, of course, says no such thing.

To the contrary, the Account Agreement expressly divorces the concept of a "deposit" from funds availability.  Indeed, the Account Agreement devotes an entire section to a "Funds Availability Schedule," which sets forth when funds will be made

4

available *following a deposit*.  Compl., Exh. B at 8-10.  In the case of "Checks $225 and Over," for example, the Account Agreement specifically states that the first $225 is made available on or before the first business day *after the deposit is received*.  *Id.* at 9 (emphasis added).[3]  And the "remaining funds will be available on the second Business Day *after the day we are considered to have received your deposit*."  *Id.* (emphasis added).  The Account Agreement goes on to state:  "For example, if you *deposit* a check of $1,000 on a Monday, $225 of the deposit is *available* on or before Tuesday.  The remaining $775 is *available* on or before Wednesday."  *Id.* (emphasis added).  The Account Agreement nowhere describes those "deposits" as "attempted deposits."  And it specifically states that funds are made available "after" a "deposit" has occurred already.  Plaintiff's entire theory, therefore, is doomed by the plain language of his Account Agreement.

Indeed, contrary to Plaintiff's proposed definition of "deposit," the Account Agreement expressly contemplates that "deposits" generally occur before—and separately from—a member's access to and use of deposited funds.  For example, the general procedure for processing deposits is described as follows:

> Except as described later in this Schedule, our general procedure is to make funds available from your **deposits** on or before the first business day **after** the day we receive your **deposit**.  At that time, you can withdraw the funds in cash and we will use the funds to pay checks or other items.  For example, if you **deposit** a check on Monday, you may not be able to access the funds from that **deposit**, to include paying other checks, until Tuesday or possibly later.

Compl., Exh. B at 8 (emphasis added).  In all respects, the plain language of the Account Agreement leaves Plaintiff's entire theory with no contractual footing.

---

[3] Plaintiff does not and cannot claim NFCU failed to make $225 available to him.  Indeed, and while not necessary to the resolution of this motion, NFCU provided Plaintiff's counsel with evidence reflecting that fact in connection with the parties' conference under Local Rule 7-3.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

5

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## III.  PLAINTIFF'S PLEADING BURDEN

To survive dismissal, Plaintiff must allege facts that demonstrate a "plausible" basis for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." *Twombly*, 550 U.S. at 556.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A claim is "plausible" only when the factual allegations allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations that establish no "more than a sheer possibility" of liability are not sufficient.  *Id.*  Indeed, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.  PLAINTIFF FAILS TO STATE ANY VIABLE CAUSE OF ACTION

### A.  Plaintiff's Claims Are Barred By The Notice-And-Cure Provision

Plaintiff's claims are barred by the Account Agreement's notice-and-cure provision.  That provision states:

> Neither Member nor [NFCU] may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that **arises from the other party's actions pursuant to this Agreement** or that **alleges that the other party has breached any provision** of, or any duty owed by reason of, this Agreement, until such party has notified the other party of such alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Compl., Exh. B at 8 (emphasis added).

Multiple courts have held that the failure to comply with such a provision bars both breach of contract and statutory claims, including claims under the UCL. *See*, *e.g.*, *Giotta*, 2016 WL 4447150, at *2-6 (dismissing UCL, FDCPA, RFDCPA, and RICO claims); *Neagle v. Goldman Sachs Grp. , Inc*, 2019 WL 1102199, at *4–5 (D. Or. Mar. 1, 2019), aff'd sub nom. *Neagle v. Altisource Sols., Inc.*, 820 F. App'x 606 (9th Cir. 2020) (dismissing Sherman Act and RICO claims); *Smith v. Flagstar Bank, FSB*, 2018 WL 3995922, at *3–4 (N.D. Cal. Aug. 21, 2018) (dismissing breach of contract claim, UCL claim, and claim under Cal. Civ. Code § 2954.8(a)); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (dismissing claims under TILA, RESPA, Regulation X at 24 C.F.R. § 3500, FDCPA, and FCRA).

The notice-and-cure provision in the Account Agreement is nearly identical to the provision at issue in *Giotta*, which states:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that **arises from the other party's actions pursuant to this Security Instrument** or that **alleges that the other party has breached any provision** of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

*Giotta*, 2016 WL 4447150, *3 (emphasis added).  As in *Giotta*, "Plaintiff[] ha[s] not alleged compliance with this provision."  *Id.*  Accordingly, the same result should follow here.  The Court should dismiss both the breach of contract and the UCL claim for failure to comply with the notice-and-cure provision.  *See Johnson*, 2010 WL 5138392, at *2 ("[B]ecause Plaintiff did not provide notice in accordance with the Deed of Trust, this Court will grant dismissal.").

**B.** **Plaintiff's Breach Of Contract Claim Independently Fails**

**1.** **Plaintiff Fails To Allege A Breach Of Contract**

Plaintiff has not and cannot state an express contract claim.  To do so under either Virginia or California law,[4] Plaintiff must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Docena v. Navy Fed. Credit Union*, 2016 WL 53826, at *2 (D. Nev. Jan. 4, 2016) (citing *Brown v. Harms*, 251 Va. 301, 306 (1996)); *see also Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (plaintiff must demonstrate (i) the existence of a contract; (ii) plaintiffs' performance or excuse for nonperformance; (iii) defendant's breach; and (iv) resulting damage to plaintiffs).  Plaintiff cannot make that showing here, and his express contract claim should be dismissed with prejudice.

As stated above, Plaintiff admits NFCU disclosed a $15 RCDC fee in the Fee Schedule.  Compl. ¶ 21; Exh. C at 1.  However, Plaintiff alleges that NFCU breached the Account Agreement because "[n]o contract provision authorizes NFCU to charge [RCDC] Fees even on attempted deposits even when no actual deposit took place." *Id.* ¶¶ 54-55.  Plaintiff is wrong.

As explained above, the Account Agreement specifically dispels Plaintiff's manufactured definition of the term "deposit"—*i.e.*, that the term "deposit" means "to deposit an item *and* to receive use of the funds deposited in exchange."  Compl. ¶ 21 (emphasis added).  While Plaintiff might not like the imposition of RCDC fees, he cannot rewrite the Account Agreement to avoid them.  *See Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 516 (2014) (courts construe a contract "as written, without

---

[4] Pursuant to the Account Agreement, Plaintiff's account is "governed in accordance with federal law and the laws of the Commonwealth of Virginia."  Compl., Exh. B at 8.  Accordingly, Virginia law governs Plaintiff's breach of contract claim.  But even if California law did apply, the claim would fail nonetheless. Plaintiff's interpretation of the Account Agreement and the disclosures contained therein is implausible under the laws of either state.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

8

adding terms that were not included by the parties"); *Wilson v. Holyfield*, 227 Va. 184, 187 (1984) ("It is the function of the court to construe the contract made by the parties, not to make a contract for them."). Because Plaintiff cannot plead around the plain language of the Account Agreement, his contract claim should be dismissed with prejudice.

### 2. Plaintiff Fails To Allege A Breach Of The Implied Covenant Of Good Faith And Fair Dealing

It is well-established that "no implied duty arises with respect to activity governed by express contractual terms." *Docena*, 2016 WL 53826, at *3. The implied covenant of good faith and fair dealing "cannot be invoked to undercut a party's express contractual rights," nor does it "compel a party to take affirmative action not otherwise required under the contract" or "establish independent duties not otherwise agreed upon by the parties." *Monton v. Am.'s Servicing Co.*, 2012 WL 3596519, *7 (E.D. Va. 2012); *see also Canas v. Ocwen Loan Servicing LLC*, 2015 WL 5601838, at *5 (C.D. Cal. Sept. 21, 2015) (the implied covenant does not "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement") (citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000)). As a result, "a party does not violate the obligation to act in good faith by enforcing a contractual right." *Albayero v. Wells Fargo Bank, N.A.*, 2011 WL 4748341, *6 (E.D. Va. 2011); *see also Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.").

As set forth above, the Account Agreement expressly addresses RCDC fees and authorizes NFCU to charge them in the manner it did. Therefore, Plaintiff does not, and cannot, state a claim for breach of the implied covenant of good faith and fair dealing. *See Monton*, 2012 WL 3596519, *7 (dismissing implied covenant claim

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

1    because "the Promissory Note and the DOT expressly provided ASC the right to

2    accelerate payment of the loan and ultimately foreclose on the property").

3        **C.    Plaintiff's UCL Claim Independently Fails**

4            **1.    Plaintiff Fails To Allege He Lacks An Adequate Legal Remedy**

5        A UCL claim is equitable in nature; remedies are limited to restitution and

6    injunctive relief.  *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL

7    13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed

8    Martin Corp.*, 29 Cal. 4th 1134, 1146-49 (2003)).  The Ninth Circuit has held that a

9    plaintiff cannot pursue equitable remedies under the UCL unless he can establish he

10   lacks an adequate legal remedy.  *Sonner*, 971 F.3d at 845 (affirming dismissal of UCL

11   claim where the plaintiff "fail[ed] to demonstrate that she lacks an adequate legal

12   remedy"); *see also O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a

13   complaint seeking equitable relief failed because it did not plead "the basic requisites

14   of the issuance of equitable relief" including "the inadequacy of remedies at law").

15   Numerous courts have dismissed UCL claims in the wake of *Sonner* for failure to

16   allege lack of an adequate legal remedy, and the Court should do so here.  *See*, *e.g.*, *In

17   re Macbook Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020)

18   (dismissing UCL claim because "Plaintiffs have failed to allege that they lack an

19   adequate remedy at law"); *Gibson v. Jaguar Land Rover N. Am.*, LLC, 2020 WL

20   5492990, at *3-4 (C.D. Cal. Sept. 9, 2020) (dismissing UCL claim with prejudice

21   because plaintiff failed to allege "facts that could support a finding that monetary

22   relief is insufficient to compensate him and the putative class for the alleged harm");

23   *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020)

24   (dismissing UCL claim because plaintiff failed to allege "there is no adequate legal

25   remedy for her UCL claim"); *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *2

26   (C.D. Cal. Sept. 3, 2020) ("The clear rule in *Sonner* [is] that plaintiffs must plead the

27   inadequacy of legal remedies before requesting equitable relief[.]").

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

2

3

4

5

6

7

8

Through his UCL claim, Plaintiff seeks equitable relief in the form of restitution of RCDC fees.  Compl. ¶ 73; Prayer for Relief.  However, Plaintiff has not and cannot show he lacks an adequate legal remedy, much less explain why the monetary damages he seeks in connection with his breach of contract claim cannot fully compensate him for the alleged harm.  *See Silvercrest Realty, Inc.*, 2012 WL 13028094, at *3 (plaintiff "fail[ed] to plausibly allege it lack[ed] an adequate remedy at law because it fail[ed] explain why the damages it seeks elsewhere in its complaint are not adequate to compensate it for its alleged injuries").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Indeed, Plaintiff's "request for 'restitution' under the [] UCL is a request for a refund, or actual money damages."  *Zeller v. Optavia, LLC*, 2022 WL 17858032, at *7 (S.D. Cal. Dec. 22, 2022); *see also In re MacBook Keyboard Litig.*, 2020 WL 6047253 at *4 ("Because Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue refunds, the Court finds that monetary damages would provide an adequate remedy for the alleged injury."); *Gibson*, 2020 WL 5492990, at *3 ("[T]here is nothing in the SAC to suggest that monetary damages would not make Plaintiff or the putative class whole. Indeed, throughout the SAC Plaintiff repeatedly alleges that he and the putative class 'lost money or property' as a result of Jaguar's wrongful conduct.").  Plaintiff ultimately seeks a refund of the RCDC fees charged by NFCU—*i.e.*, the same relief he seeks in connection with his contract claim. Regardless of whether Plaintiff obtains a "restitution of RCDC fees" or monetary damages consisting of the RCDC fees charged by NFCU, the amount of recovery is the same.  Plaintiff has an adequate legal remedy, and the UCL claim fails for this reason alone.  *See Sonner*, 971 F.3d at 844 (finding "Sonner fails to establish that she lacks an adequate remedy at law" because Sonner "seeks the same sum in equitable restitution … as she requested in damages").

26

27

28

Further, because the UCL claim and the breach of contract claim are based on the same "factual predicates," the UCL claim should be dismissed with prejudice.  *See Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11

2019) (dismissing UCL claim without leave to amend because it relies on same "factual predicates" as the legal claims); *Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *4-5 (C.D. Cal. Dec. 14, 2017) (same).

## 2. The UCL Claim Is Preempted

The UCL claim also fails because it is preempted by the NCUA's regulations implementing the FCUA and TISA. The FCUA "authorized the creation of federally-chartered credit unions and created the [NCUA] to supervise those federally-chartered credit unions." *Credit Union Nat'l. Ass'n v. Nat'l Credit Union Admin.*, 57 F. Supp. 2d 294, 296 (E.D. Va. 1995), aff'd sub nom. *Nat'l Ass'n of State Credit Union Sup'rs v. Nat'l Credit Union Admin.*, 188 F.3d 228 (4th Cir. 1999). Congress provided the NCUA with the power to "prescribe rules and regulations" for the administration of the FCUA. *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, at *6 (E.D. Tex. Sept. 14, 2017) (citing 12 U.S.C. § 1766(a)). "Similarly, as part of the Federal Deposit Insurance Corporation Improvement Act, Congress enacted TISA and delegated to the NCUA the authority to promulgate regulations for credit unions 'taking into account [their] unique nature.'" *Id.* (quoting 12 U.S.C. § 4311). "As the agency tasked to administer the FCUA and TISA, the NCUA's regulations, as well as their interpretation, are given 'controlling weight.'" *Id.* at *7 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

The FCUA's implementing regulations provide that a federal credit union may "determine the types of fees or charges and other matters affecting the opening, maintaining and closing of a [checking] account. *State laws regulating such activities are not applicable to federal credit unions*." 12 C.F.R. § 701.35(c) (emphasis added). In promulgating 12 C.F.R. § 701.35(c), the NCUA explained that the proposed regulation "expressly provides that [federal credit unions] are authorized to determine, *free from state regulation*, the types of disclosures, fees or charges, time for crediting of deposited funds, and all other matters associated with the establishment, maintenance or closing of a share, share draft, or share certificate account." 49 Fed.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Reg. 46552-01 (Nov. 27, 1984) (emphasis added). When the regulation became final, the NCUA stated that "[t]his final rule provides that policies with respect to disclosures, fees or charges, time for crediting of deposited funds, and other matters affecting the opening, maintaining or closing of a [checking] account, shall be determined by [a federal credit union's] member-elected board of directors, *free from regulatory restrictions*." 50 Fed. Reg. 4636-01 (Feb. 1, 1985) (emphasis added). Consistent with these declarations, the NCUA has applied 12 C.F.R. § 701.35(c) to preempt various state laws that attempt to affect the account fees a federal credit union may charge. *See*, *e.g.*, NCUA Op. Letter 07-0743 (Aug. 7, 2007) (finding Georgia law prohibiting federal credit unions from charging a fee for cashing checks is preempted); NCUA Op. Letter 04-0259 (Mar. 12, 2004) (finding Connecticut statute prohibiting federal credit unions from assessing fees against member share accounts based on inactivity or dormancy is preempted); NCUA Op. Letter 97-0508 (July 7, 1997) (finding, in the context of assessment of overdraft fees, "state laws regulating matters affecting the opening, maintaining and closing of a share draft account are not applicable to an FCU").

Similarly, the TISA's implementing regulations require credit unions to provide disclosures regarding "[t]he amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed," 12 C.F.R. § 707.4(b)(4), and expressly preempt "[s]tate law requirements that are inconsistent with the requirements of the TISA and [its implementing regulations]," 12 C.F.R. § 707.1(d).

"Consistent with the language and purpose of these regulations, it is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted." *Lambert*, 2019 WL 3843064, at *2. That is precisely what Plaintiff alleges here. He claims NFCU omitted "material facts regarding its account

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

13

practices" and challenges the alleged unfairness of "charg[ing] [RCDC] fees even where no actual deposit or check cashing took place." Compl. ¶¶ 70-71.

Plaintiff's "attempts to use a state consumer law to dictate to a federal credit union what fees it may charge and how it may charge them" are preempted, and the Court should dismiss his UCL claim accordingly. *Whittington*, 2017 WL 6988193, at *9 (Texas Deceptive Trade Practices Act claim against federal credit union preempted); *see also Lambert*, 2019 WL 3843064, at *3 ("To the extent Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself … those arguments are clearly preempted.").[5]

### 3. The UCL Claim Is Barred By The Account Agreement's Choice-Of-Law Provision

Plaintiff's UCL claim also fails under the Account Agreement's choice-of-law provision, which states that his account is "governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended." Compl., Exh. B at 8.

"A 'federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.'" *Pulte Home Corp. v. Am. Safety Indem. Co.*, 268 F. Supp. 3d 1091, 1095 (S.D. Cal. 2017) (quoting *Atl. Marine Const. Co. v. U.S. Dist.*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[5] Numerous courts have reached a similar conclusion when faced with state consumer law claims that interfere with a financial institution's exercise of federally delegated powers. *See, e.g., Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 730 (9th Cir. 2012) (finding UCL claim challenging the practice of posting debit-card transactions in high-to-low order was preempted by the NBA); *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197-98 (11th Cir. 2011) (holding that a state statute which disallowed banks from charging non-customers for cashing checks was preempted because it significantly reduced the bank's discretion in deciding how to charge fees); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) (finding UCL claim challenging bank's failure to include certain disclosures on "convenience checks" is preempted by the NBA); *Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106, 1113 (C.D. Cal. 2007) ("[T]o the extent plaintiff contends that defendants' conduct constitutes unfair or deceptive business practices pursuant to the UCL and the CLRA, these claims are in conflict with the NBA and the regulations promulgated thereunder.")

*Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013)).  As this Court sits in the Central District of California, California law governs the enforceability of the choice-of-law provision at issue.  *See id.*  "In determining the enforceability of a choice-of-law provision, California courts apply the principles set forth in Restatement § 187 which reflect a strong policy favoring enforcement of such provisions."  *Id.* (citing *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 465 (1992)).

"The party advocating application of the choice-of-law provision has the burden of establishing a substantial relationship between the chosen state and the contracting parties."  *Pulte Home Corp.*, 268 F. Supp. 3d at 1095.  Where "one of the contracting parties … had its principle place of business in the chosen state," there is a "substantial relationship" between the chosen state and the contracting parties.  *Id.*; *see also Nedlloyd Lines B.V.*, 3 Cal. 4th at 467 ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice.").  Here, NFCU's principal place of business is in Virginia and it "is a citizen of Virginia."  *Navy Fed. Credit Union v. LTD Fin. Servs.*, LP, 972 F.3d 344, 353 (4th Cir. 2020).  Therefore, the choice-of-law provision is enforceable.

In *Lambert*, the Court considered the exact choice-of-law provision that is in the Account Agreement here.  *See Lambert*, 2019 WL 3843064, at *6 ("The contract specifies that '[NFCU] accounts are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended.'").  The Court found that the language of the provision "is sufficiently broad to preclude" the claim under North Carolina's Unfair and Deceptive Trade Practices Act.  *Id.*  The Court should reach the same conclusion here and dismiss Plaintiff's UCL claim.

### 4.    Plaintiff Fails To Allege Unlawful, Unfair, Or Fraudulent Conduct

Even if the UCL claim overcame all of the foregoing hurdles (and it cannot), it fails nonetheless because Plaintiff has not and cannot allege any predicate wrongdoing on the part of NFCU.  To state a UCL claim, Plaintiff must show NFCU's alleged

conduct is "(1) unlawful, (2), unfair, or (3) fraudulent." *Dirks v. CitiMortgage, Inc.*, 2020 WL 7089823, at *5 (C.D. Cal. Nov. 19, 2020). He cannot do so.

*First*, Plaintiff cannot show "unlawful" conduct because he does not and cannot show NFCU violated any laws whatsoever. To the extent Plaintiff relies on the CFPB bulletin attached as Exhibit A to his complaint, such reliance is misplaced. The bulletin makes it clear that it is merely a "general statement of policy," it "does not confer any rights of any kind," and it "does not impose any new or revise any existing … disclosure requirements." *Id.*, Exh. A at 66942. Indeed, the CFPB has formally stated that its supervisory guidance (such as a bulletin) "does not have the force and effect of law." 12 C.F.R. Part 1074 (Appendix A). A financial institution cannot be criticized for, and "the Bureau will not issue an enforcement action on the basis of, a 'violation' of or 'non-compliance' with supervisory guidance." *Id.*

*Second*, Plaintiff cannot show "fraudulent" conduct because the Account Agreement and corresponding Fee Schedule openly disclose the RCDC fee, which NFCU charges for "Returned checks," whether "deposited or cashed."[6]

*Third*, Plaintiff cannot show "unfair" conduct. To do so, Plaintiff must show NFCU's assessment of RCDC fees "violates established public policy or … is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits" *Nolte v. Cedars-Sinai Med. Ctr.*, 236 Cal. App. 4th 1401, 1407 (2015). Plaintiff cannot make that showing here.

Plaintiff claims NFCU's "acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers." Compl. ¶ 66. Plaintiff further claims the "harm to Plaintiff and the Class outweighs the utility of Defendant's practices" because "[t]here were reasonably available alternatives to

---

[6] Plaintiff fails to plead reliance in any event. He does not claim he even read the Account Agreement. *See Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 11027559 (C.D. Cal. Jan. 13, 2011) (no actual reliance where plaintiff failed to expressly state that he read or relied on the representations at issue).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

16

further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein." *Id.* ¶ 67. As stated above, NFCU openly disclosed the existence of RCDC fees and the reasons for their assessment, and Plaintiff's attempt to twist the plain language of those disclosures to say otherwise is implausible. Quite simply, there is no lack of "fee transparency" or "misleading and deceptive conduct" here. *Id.* ¶¶ 66-67. And there is nothing "unfair" about NFCU's performance of a contract in accordance with its terms.

Accordingly, Plaintiff fails to allege the requisite conduct for a UCL claim. Dismissal is warranted for this additional reason.

## V.   PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES SHOULD BE DISMISSED

### A.   Plaintiff Cannot Recover Punitive Damages

Plaintiff cannot recover punitive damages under a contract claim regardless of whether California or Virginia law is applied. "Virginia law does not allow punitive damages for breach of contract claims." *Bhutta v. DRM Constr. Corp.*, 2023 WL 3901800, at *2 (E.D. Va. June 8, 2023) (citing *O'Connell v. Bean*, 263 Va. 176, 181 (2002)). Likewise, in California, punitive damages are only available "for the breach of an obligation *not* arising from contract." Cal. Civ. Code § 3294 (emphasis added); *see also Black v. State Farm Gen. Ins. Co.*, 2019 WL 7905736, at *8 (C.D. Cal. Dec. 23, 2019) ("Parties cannot recover punitive damages for a breach of contract in the absence of an independent tort, even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious.") (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994)).

Punitive damages also cannot be recovered under the UCL. *See Clark v. Superior Ct.*, 50 Cal. 4th 605, 610 (2010) ("Not recoverable [under the UCL] are … punitive damages"). Plaintiff's request for punitive damages should be dismissed.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### B.    Plaintiff Cannot Recover Attorneys' Fees

The Account Agreement does not permit Plaintiff to recover attorneys' fees.  The only mention of attorneys' fees in the Account Agreement authorizes NFCU to recover attorneys' fees in connection with contractual liens, which is inapplicable here.  Nor are attorneys' fees recoverable under the UCL.  *See Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) ("Plaintiffs may not receive … attorney fees" under the UCL); *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013) (same).  Thus, Plaintiff's request for attorneys' fees should be dismissed.

## VI.    CONCLUSION

Because Plaintiff cannot plead around the plain language of the Account Agreement, the Court should dismiss his entire Complaint with prejudice.


Dated:  August 28, 2023                              **HUNTON ANDREWS KURTH LLP**


                                                    By:    ___*/s/ Jason J. Kim*_____
                                                            Jason J. Kim
                                                            Hakop Stepanyan
                                                            Marcus E. Nelson
                                                    Attorneys for Defendant
                                                    NAVY FEDERAL CREDIT UNION

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Navy Federal Credit Union, certifies that this brief contains 6,144 words, which:

 $\underline{X}$  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].


Dated:  August 28, 2023              **HUNTON ANDREWS KURTH LLP**


                                     By: ____*/s/ Jason J. Kim*_____
                                          Jason J. Kim
                                          Hakop Stepanyan
                                          Marcus E. Nelson
                                          Attorneys for Defendant
                                          NAVY FEDERAL CREDIT UNION

19